# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6080 | **DATE** | 2/24/2011 |
| **CASE TITLE** | Nesbitt vs. Villanueva | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, Defendant's Motions for Summary Judgment [43] and [48] are denied with prejudice on the issue of whether plaintiff exhausted his administrative remedies. In all other respects, the motions are denied without prejudice. Plaintiff's Motions to Deny Summary Judgment [57] and [58], which are in effect plaintiff's Local Rule 56.1(b) responses to defendant's Local Rule 56.1(a) statement of facts, are granted. Status hearing set for March 10, 2011 at 9:00 a.m. to explore the issue of whether a settlement conference would be beneficial.

■[ For further details see text below.]                                              Notices mailed by Judicial staff.

# STATEMENT

This case comes before the court on defendant Superintendent Nelson Villanueva's motion for summary judgment. For the reasons that follow, Villanueva's motion is denied with prejudice on the issue of whether plaintiff Raymond Nesbitt failed to exhaust his administrative remedies, and denied without prejudice on the merits issues raised as to whether Villanueva was deliberately indifferent to plaintiff Raymond Nesbitt's medical condition.

### *Background*

This case involves Nesbitt's *pro se* § 1983 claim that Villanueva, a correctional officer at Cook County Jail, violated his civil rights by refusing to allow him to keep shoes that helped alleviate pain caused by his foot condition. (Compl. ¶ 4.) [Dkt 1.] Nesbitt was a pretrial detainee at Cook County Jail from April 13, 2005 until December 12, 2008. (Pl.'s LR Resp. ¶ 1.) [Dkt 57.][1] Nesbitt suffers from plantar fasciitis, a condition that makes it painful for him to walk at times. (Def.'s LR Stmt., Ex. 1, Nesbitt Dep. at 13-14.) [Dkt 46.] He also suffers from a herniated disc and pinched sciatic nerve, which causes numbness in his toes. (Pl.'s LR Resp. ¶ 4.)[2] In approximately August 2006, Nesbitt was transferred from Division XI of the jail to Division I. (Nesbitt Dep. at 13, 15-16.)

While in Division XI, Nesbitt had been allowed to wear the thick-soled boots he had on when entering the jail. (*Id.*) At the time of his 2006 transfer, Nesbitt was provided with state-issued shoes. (*Id.* at 13, 16.) Thereafter, in February 2007, he received an open-ended prescription from a doctor allowing him to recover the shoes he had worn upon entering the jail due to his plantar fasciitis. (Pl.'s LR Resp., Ex. 1; Nesbitt Dep. at 9, 16, 17-20, 22-24.) After receiving the prescription, Nesbitt was allowed to search his clothing bag, but could not find his shoes. (Nesbitt Dep. at 17, 21-24.) Nesbitt then tried to locate his shoes in a supply room where other prisoners' shoes were kept, and when he could not find them there, he was allowed to select

another pair of gym shoes with extra thick soles. (*Id*.) They were not prescription shoes, but provided him some relief. (Pl.'s LR Resp. ¶ 5.)

Nesbitt testified that on September 28, 2007, correctional officers removed the shoes of all detainees in Division I and replaced them with state-issued shoes with very thin soles. (Nesbitt Dep. at 8.) On that date, Nesbitt attempted to explain his medical condition to the officers and the reasons why he needed to keep the thick-soled shoes he was wearing, but alleges his explanations were ignored. (Nesbitt Dep. at 7-11.) Nesbitt testified that he showed Villanueva the prescription directing that Nesbitt wear athletic shoes, but that Villanueva disregarded it and directed other correctional officers to segregate Nesbitt if he did not give up his shoes. (Nesbitt Dep. at 9-11.)

At the time of the incident, Cook County Jail maintained a policy governing internal grievance procedures for detainees, which was available to inmates. (Pl.'s LR Resp. ¶ 14.) Although the grievance policy submitted by Nesbitt is not the same as the grievance policy submitted by Villanueva, both versions of the policy allowed an inmate to file a grievance for any condition considered unjust, including alleged violations of constitutional rights. (Pl.'s LR Resp., Ex. 4(b); Def.'s LR Stmt., Ex. 5, Aff. John Mueller, unlabeled exhibit ¶¶ II, III.) Both versions also provided a process to appeal the outcome of a grievance decision, although there is some question about the time for doing so. The copy of the policy Nesbitt submitted allowed for fourteen days to file an appeal with the "Appeal Panel," while the copy Villanueva submitted allowed for five days to file an appeal with the "Administrator of Program Services or designee." (Pl.'s LR Resp., Ex. 4(b); Def.'s LR Stmt., Ex. 5 ¶ III. C.) Neither version included any further steps in the grievance process following the appeal.

On November 7, 2007, Nesbitt filed a grievance about the September 28 incident. (Def.'s LR Stmt., Ex. 6.) He received a response to the grievance dated November 28, 2007, which stated that "Inmate was referred to Div. 1 Dispensary for treatment." (*Id*.) Nesbitt believed that his complaint would be addressed by the medical staff, and so he did not file a formal appeal of the grievance decision. (Nesbitt Dep. at 50-51; Def.'s LR Stmt. ¶ 20.)

It is unclear precisely when Nesbitt went to the dispensary, but he testified that he did not get his shoes back. (Nesbitt Dep. at 50-51.) By the time Nesbitt realized he was not going to get his shoes or any alternative relief, the deadline for appeal had passed. (*Id*.) He saw a podiatrist in mid-2008, who did not prescribe any special shoes or recommend that he receive the shoes back that he had been wearing. (*Id.* at 41-43.) Nesbitt filed additional grievances about the shoe issue among other issues related to his medical treatment on August 28, 2008[3] and October 6, 2008. (Pl.'s LR Resp., Exs. 2, 5.) Nesbitt filed the complaint in this case on September 29, 2009.

At a status hearing on May 7, 2010, Villanueva's counsel alerted the court that he intended to move for summary judgment. (*See* Order, May 7, 2010.) [Dkt 42.] The court reminded both parties that pursuant to the Seventh Circuit's decision in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the threshold issue is whether Nesbitt properly exhausted the administrative grievance process pursuant to the Prison Litigation Reform Act ("PLRA") before bringing his lawsuit. The court directed the parties to only address the issue of exhaustion before moving to the merits of the case.

Villanueva then moved for summary judgment on the grounds that there is no genuine issue of material fact that: (1) Nesbitt failed to properly exhaust all administrative remedies as required by the PLRA; (2) Villanueva was not personally involved in Nesbitt's shoes being taken away; and (3) Villanueva was not deliberately indifferent to Nesbitt's condition of plantar fasciitis. (Def.'s Mem. at 2-11.) [Dkt 45.]

At a subsequent status hearing on June 11, 2010, the court directed Nesbitt to respond only to Villanueva's argument on the exhaustion issue, as the arguments on the merits were premature. (*See* Order, June 11, 2010.) [Dkt 51.] The court also told Nesbitt that if it determined he properly exhausted his administrative remedies, it would allow him additional time to conduct discovery on the merits. Nesbitt responded to the motion for summary judgment on the exhaustion issue only. (*See* Pl.'s Resp.) [Dkt 56.]

**STATEMENT**

*Discussion*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). If a prison has an internal administrative process through which a prisoner can seek to correct a complaint, the prisoner must utilize it before filing a claim. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). The Seventh Circuit has taken a "strict compliance" approach to exhaustion under the PLRA. *Dole*, 438 F.3d at 809. Accordingly, all mandatory grievances and appeals must be filed in the time frame required by the administrative process. *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2005).

Procedurally, although failure to exhaust is not a jurisdictional defect, failure to meet the exhaustion provision of the PLRA will result in dismissal of the case. *Perez v. Wisconsin Dept. of Corrects.*, 182 F.3d 532, 535 (7th Cir. 1999). Where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before proceeding to the merits. *Pavey*, 544 F.3d at 741-42. Once it has been established that a contested issue of fact exists over whether the prisoner has met the exhaustion requirement, the Seventh Circuit has laid out the following procedure for the district judge to follow:

> (1) the district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent . . . and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust . . .); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits . . . .

*Id.* at 742.

*Pavey* dictates that the court conduct a hearing to resolve contested issues related to exhaustion of remedies under the PLRA. However, if the court can resolve the question of exhaustion based on the affidavits and documentary evidence, it renders a hearing unnecessary. *See, e.g., McLaughlin v. Freeman*, No. 08 C 58, 2010 WL 1049878 at *4 (N.D. Ind. Mar. 16, 2010).

Failure to exhaust is an affirmative defense that must be pleaded and proved by the defendant. *Pavey*, 544 F.3d at 740-41. It is therefore the defendant's burden to show that administrative remedies were "available" to the prisoner, and that he failed to exhaust them. *Dole*, 438 F.3d at 809. Whether a remedy was "available" depends on whether it was open for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Id.* But "when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality . . . ." *Id.*

As an initial matter, Nesbitt has raised the argument that the PLRA should not apply to him as a pretrial detainee. (Pl.'s LR Resp. ¶ 2.) However, the definition of "prisoner" in the PLRA, as the Seventh Circuit has made clear, encompasses pretrial detainees. 42 U.S.C. § 1997e(h); *Kalinowski v. Bond*, 358 F.3d 978, 979 (7th Cir. 2004) ("prisoner" under the PLRA includes those "accused of . . . violations of criminal law . . .").

Given the evidence submitted by the parties, Villanueva has not met his burden of establishing that Nesbitt failed to exhaust his administrative remedies. Nesbitt received a response to his grievance on

> **STATEMENT**

November 28, 2007, which stated that he was being referred to the dispensary for treatment. Nesbitt testified that he did not appeal the decision on his grievance because he believed, based on that response, that his grievance was going to be resolved. (Nesbitt Dep. at 50-51.) Nesbitt acted reasonably in relying on the grievance response. When it became apparent that he was not going to get his shoes back or get alternative relief, the short time for filing an appeal had passed.

An administrative remedy may become unavailable under the PLRA when prison officials "do not respond to a properly filed grievance." *Dole,* 438 F.3d at 809. The same holds true when prison officials respond to the complaint with a plan to address it, but do not follow through on that plan. As the Seventh Circuit stated:

> Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic. . . . For, if a prisoner who wins on his initial grievance must file one further grievance to get practical relief, what is to prevent the prison system from repeatedly failing to follow through and requiring the prisoner to endlessly seek a real resolution?

*Dixon v. Page,* 291 F.3d 485, 490 (7th Cir. 2002). At least one court in this district has interpreted this to mean that a prisoner who believed in good faith his grievance was being addressed could not be faulted for failing to timely appeal it, and thus had properly exhausted his administrative remedies. *Myers v. Mcauley*, No. 02 C 1590, 2002 WL 31006131 at * 3 (N.D. Ill. Sept. 5, 2002) ("Because the plaintiff's concerns about the lack of medical attention were supposedly being addressed and rectified by the dispensary, there would have been no reason to appeal the decision to the next level of review.").

Because Nesbitt reasonably believed that he had prevailed on his grievance, he was not required to file an appeal. When he received a response indicating that his complaint would be addressed by the dispensary, he was entitled to rely on that promise rather than appeal the grievance. Because Nesbitt is no longer at Cook County Jail, the grievance system is no longer available to him, and it is too late for him to obtain a change in conditions for himself at the jail. Accordingly, summary judgment on this basis is not appropriate.

Nesbitt has not yet had an opportunity to take discovery in this case or to address the merits arguments raised in Villanueva's motion. This decision expresses no opinion on the merits. However, before going further in this litigation, especially in light of the fact that Nesbitt is no longer at Cook County Jail, the court would like to determine whether settlement is a possibility the parties would be interested in pursuing. Both sides should be prepared to discuss this possibility at the status hearing on March 10, 2011.

---

1. Although Nesbitt titled his *pro se* submission "Motion to Deny Summary Judgment," it is clear from its substance that it is intended to be his response in opposition to Villanueva's Local Rule statement of facts.

2. That statement, like certain others in Nesbitt's response to Villanueva's Local Rule statement of facts is not supported with citations to the record, as is required by the Local Rules. *See* LR 56.1(b)(3).

3. Although Nesbitt dated the grievance August 28, 2007, the text indicates that the date was a mistake and that the grievance actually was submitted on August 26, 2008.